**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

Erie Insurance Company )
                    *Plaintiff*, )
                                  )
   v. )
                                  )           Case No.
JSN Network, Inc., McHenry Donuts, Inc.. )
Johnsburg Coffee LLC, Algonquin Coffee, )
Inc., Antioch Orchard St. Coffee, Inc., )
Unknown Corporate Name 1 [469 W. )
Liberty Street, Wauconda, IL], J & SP )
Food, Inc., McHenry Rt. 31 Coffee, Inc., )
Jayantilal Patel, Suresh Patel, Nilesh Patel, )
Alka Patel, Curt Pedro, Naimesh )
Upadhyaya, Shoney Bonney, and Brianna )
Castelli )
                    *Defendants.* )

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, ERIE INSURANCE COMPANY ("ERIE"), by and through its attorneys, COLLEEN A. BEVERLY and CLAUSEN MILLER, P.C., brings this Complaint for Declaratory Judgment against Defendants JSN Network, Inc., McHenry Donuts, Inc., Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, IL], J & SP Food, Inc., McHenry Rt. 31 Coffee, Inc., Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya, Shoney Bonney, Brianna Castelli, and alleges as follows:

**Nature of Action**

1.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 wherein Erie seeks a declaration that is has no duty to defend or indemnify JSN Defendants under several policies of insurance with respect to claims asserted in the underlying action captioned *Brianna*

*Castelli, Individually and as Class Representative v. JSN Network, Inc.*, *et al.*, Case No. 1:25-cv-13208, pending in the United States District Court for the Northern District of Illinois, Eastern District (the "Underlying Action").

## Jurisdiction and Venue

2.      Jurisdiction over this action is proper in this Court pursuant to 28 U.S.C. § 1332 in that, upon information and belief, this amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendants.

3.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 as the events that give rise to the Underlying Action occurred in this district.

## Parties

4.      Plaintiff Erie Insurance Company is a stock company organized under the laws of Pennsylvania, with its principal place of business in Pennsylvania, is wholly owned by Erie Insurance Exchange and is licensed to do business in Illinois.

5.      Upon information and belief, Defendant JSN Network, Inc. is an Illinois corporation whose registered agent is Alka Patel and is located at 1180 Heather Drive, Lake Zurich, Illinois 60047.

6.      Upon information and belief, Defendant McHenry Donuts, Inc. is an Illinois corporation whose registered agent is Suresh Patel and is located at 4502 Elm Street, McHenry, Illinois 60050.

7.      Upon information and belief, Defendant Johnsburg Coffee LLC is an Illinois limited liability company whose registered agent is Jayantilal Patel and is located at 2911 N. Richmond Rd., Johnsburg, IL 60051.

2

8.     Upon information and belief, Defendant Algonquin Coffee, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel and is located at 1180 Heather Dr., Lake Zurich, IL 60047.

9.     Upon information and belief, Defendant Antioch Orchard St. Coffee, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel and is located at 1180 Heather Dr., Lake Zurich, IL 60047.

10.     Upon information and belief, Defendant Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, IL] operates as a Dunkin Donuts.

11.     Upon information and belief, Defendant J & SP Food, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel and is located at 1180 Heather Dr., Lake Zurich, IL 60047.

12.     Upon information and belief, Defendant McHenry Rt. 31 Coffee, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel and is located at 1180 Heather Dr., Lake Zurich, IL 60047. Defendants JSN Network, Inc., McHenry Donuts, Inc., Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, IL], J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc. are collectively referred to herein as "Corporate Dunkin' Defendants".

13.     Upon information and belief, Defendant Jayantilal Patel lives in the State of Illinois and is listed as the registered agent for Defendants Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., J & SP Food, Inc., and Johnsburg Coffee LLC. Jayantilal Patel is also listed as a director of JSN Network, Inc.

14.     Upon information and belief, Defendant Suresh Patel lives in the State of Illinois and is listed as the registered agent for Defendant McHenry Donuts, Inc.

3

15.     Upon information and belief, Defendant Nilesh Patel lives in the states of Illinois and is employed and/or an owner of Defendant JSN Network, Inc.

16.     Upon information and belief, Defendant Alka Patel lives in the State of Illinois and is listed as the registered agent for JSN Network, Inc.

17.     Upon information and belief, Defendant Curt Pedro lives in the State of Illinois and was and/or is currently an employee of Defendant JSN Network, Inc.

18.     Upon information and belief, Defendant Naimesh Upadhyaya lives in the State of Illinois and was and/or is currently an employee of Defendant JSN Network, Inc.

19.     Upon information and belief, Defendant Shoney Bonney lives in the State of Illinois and was and/or is currently an employee of Defendant JSN Network, Inc. Defendants Alka Patel, Nilesh Patel, Suresh Patel, Curt Pedro, Naimesh Upadhyaya, and Shona Bonney are collectively referred to herein as ("Non-Corporate Dunkin' Defendants").

20.     Upon information and belief, Defendant Briana Castelli lives in the State of Illinois. Defendant Castelli is named in this action as a nominal defendant in order to bind Ms. Castelli by any judgment entered in this declaratory judgment action.

## FACTUAL BACKGROUND

### The Underlying Action

21.     On or about October 29, 2025, Brianna Castelli ("Underlying Plaintiff") filed her complaint in the Underlying Action (the "Underlying Complaint"). A true and correct copy of the Underlying Complaint is attached hereto as Exhibit A.

22.     According to the Underlying Complaint, Defendant JSN Network, Inc. ("JSN Network") controls and manages 50+ Dunkin' and Baskin Robbins locations throughout Illinois, including but not limited to, Defendants McHenry Donuts, Inc., Johnsburg Coffee LLC, Algonquin

4

Coffee Inc., Antioch Orchard St. Coffee Inc., Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, IL], J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc. (collectively, "Corporate Dunkin' Defendants"), as well as Suresh, Inc., J&J Donuts, Inc., Libertyville Park Ave Coffee, Inc., JLL, Inc., Libertyville Rt. 21 Coffee, Inc., Green Oaks Coffee LLC, Grand Ave Coffee, Inc., North Wadsworth Coffee, Inc., Lyla Inc., Lewis Ave Coffee, Inc., Green Bay Coffee, Inc., East Zion Coffee, Inc., Jay Shiv Hankar Inc., Round Lake Coffee LLC, Shiv Shambhu, Inc., North Chicago Coffee, Inc., Belvidere Coffee, Inc., Lake Bluff Coffee, Inc., Jay Maa, Inc., Mundelein Lake St. Coffee, Inc., Shree Ganesh Donuts, Inc., South Wadsworth Coffee, Inc., Fountain Square Coffee, Inc., Washington St. Coffee, Inc., Lincolnshire Coffee, Inc., West Zion Coffee, Inc., Antioch Walmart Coffee, Inc., J & SP Food, Inc., Jay Shiv Shankar, Inc., Great Lakes Coffee, Inc., Gurnee Coffee, Inc., Mundelein Rt. 45 Coffee, Inc., Vernon Hills Coffee, Inc., Rockland Coffee, Inc., Mundelein Rt. 83 Coffee, Inc., Jay Shiv Krupa, Inc., Palatine Coffee, Inc., Manisha, Inc., Hainesville Coffee, Inc., Huntley Coffee, Inc., Lake Forest Coffee, Inc., and Richmond Donuts LLC. Ex. A., ¶ 20.

23.     According to the Underlying Complaint, Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro are all owners, officers, or employed as management by Defendant JSN Network. Ex. A., ¶ 25.

24.     According to the Underlying Complaint, Defendant Alka Patel is the owner of Defendant JSN Network and oversees the end-to-end operations of 50+ Dunkin' and Baskin Robbins locations. Ex. A., ¶ 26.

25.     According to the Underlying Complaint, Defendant Naimesh Upadhyaya was a district manager and Shona Bonney was a general manager employed by Defendant JSN Network until February 2024 and October 2024, respectively. Ex. A., ¶¶ 28, 111-112.

26. According to the Underlying Complaint, Defendant JSN Network manages the financial aspects of, collects a management fee from, and funds expenses for each location in its network of stores. Ex. A., ¶¶ 29-30.

27. According to the Underlying Complaint, Defendant JSN Network also manages employees that work in its network. Ex. A., ¶ 31.

28. According to the Underlying Complaint, Underlying Plaintiff worked for Defendants JSN Network at McHenry Donuts Inc. ("McHenry Donut")'s store starting on September 19, 2022. Ex. A., ¶ 32.

29. According to the Underlying Complaint, Underlying Plaintiff was simultaneously employed by JSN Network and the Dunkin' Entities. Ex. A., ¶ 33.

30. According to the Underlying Complaint, on August 18, 2022, Underlying Plaintiff executed an offer letter for a salaried position sent from JSN Network. Ex. A., ¶¶ 34-35, 43.

31. According to the Underlying Complaint, Underlying Plaintiff was required to attend training to learn JSN Network's systems. Ex. A., ¶ 38.

32. According to the Underlying Complaint, the offer letter stated that JSN Network's district manager, Defendant Naimesh Upadhyaya, would be her supervisor and would work with her to complete her Dunkin Manager Training in McHenry, Illinois. Ex. A., ¶¶ 40-41.

33. According to the Underlying Complaint, on September 19, 2022, Underlying Plaintiff executed an employment contract with the employer identified as McHenry Donuts, Inc or to be determined based on any chosen location of JSN Network Inc.'s locations. Ex. A., ¶ 50.

34. According to the Underlying Complaint, Underlying Plaintiff worked as a restaurant manager at McHenry Donuts, Inc. at 4502 Elm Street, McHenry, Illinois 60050. Ex. A., ¶ 59.

35.     According to the Underlying Complaint, on multiple occasion Defendants Naimesh Upadhyaya and Shona Bonney instructed Underlying Plaintiff to work at locations including Defendants Johnsburg Coffee, Algonquin Coffee, Antioch Orchard Coffee, Inc. Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, IL], McHenry Rt. 31 Coffee, Inc., and J & SP Food, Inc. Ex. A., ¶ 62.

36.     According to the Underlying Complaint, Underlying Plaintiff was required to clock in and clock out at the McHenry Donuts store when she worked at other locations. Ex. A., ¶ 63.

37.     According to the Underlying Complaint, while working at the stores of Defendants Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, Il 60084], J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc., these Defendants operated as Plaintiff's employer, because they had the authority to hire or fire Plaintiff to work at their location, set the conditions of her employment while Plaintiff worked at their store, supervised Plaintiff while she worked at their store, and controlled her employment records for her time working at their store. Ex. A., ¶ 65.

38.     According to the Underlying Complaint, the district managers and owners of various stores in the JSN Network, including Non-Corporate Dunkin' Defendants and Underlying Plaintiff, attended quarterly meetings located at 1180 Heather Drive. Ex. A., ¶¶ 67-68.

39.     According to the Underlying Complaint, Defendants determined that employees were to be paid from their home store regardless of the location where he/she worked and the home store would list pay as "labor" cost. Ex. A., ¶¶ 72-73.

40.     According to the Underlying Complaint, Underlying Plaintiffs was routinely denied bonuses based on her home store's "labor" costs, costs of food products, and "Paid Outs." Ex. A., ¶ 75.

12664017.1

41.     According to the Underlying Complaint, Non-Corporate Dunkin' Defendants denied Underlying Plaintiff her full, earned bonus for Q3 in 2023. Ex. A., ¶ 76.

42.     According to the Underlying Complaint, during other quarters in 2022, 2023 and 2024, Underlying Plaintiff and other similarly situated restaurant managers were denied earned bonuses due to "labor" costs, costs of food products, and "Paid Outs." Ex. A., ¶ 77.

43.     According to the Underlying Complaint, Defendant JSN Network determines and carries out the employment policies for employees at the 50+ stores in the JSN Network, including those listed in ¶ 22. Ex. A., ¶ 91.

44.     According to the Underlying Complaint, all Defendants were responsible for the alleged Fair Labor Standards Act (FLSA) violations while acting in the interests of JSN Network and the other named Defendants. Ex. A., ¶ 93.

45.     According to Count I of the Underlying Complaint, Defendants willfully violated the FLSA by dividing up their companies to avoid liability under FLSA and other federal laws. Ex. A., ¶¶ 127-128.

46.     According to Count I of the Underlying Complaint, Underlying Plaintiff was classified as an exempt employee. Ex. A., ¶ 130.

47.     According to Count I of the Underlying Complaint, on multiple occasions in 2022, 2023, and 2024, one or more Defendants made deductions from Underlying Plaintiff's predetermined salary. Ex. A., ¶ 133

48.     According to Count I of the Underlying Complaint, on numerous weeks when Underlying Plaintiff worked less than her weekly requirements Defendants paid Underlying Plaintiff on an hourly basis rather than her bi-weekly salary, citing seven examples of weeks wherein Underlying Plaintiff was paid on an hourly basis. Ex. A., ¶ 134.

12664017.1

49.     According to Count I of the Underlying Complaint, Defendants made the decision willfully to violate the FLSA and pay Underlying Plaintiff hourly on weeks when as an exempt employee, she was entitled to her weekly salary. Ex. A., ¶ 136.

50.     According to Count I of the Underlying Complaint, Defendants knew or acted with reckless disregard and failed to make an adequate inquiry into whether paying Underlying Plaintiff on an hourly violated the FLSA. Ex. A., ¶ 137.

51.     According to Count I of the Underlying Complaint, Defendants deductions from Underlying Plaintiff's predetermined salary violated the salary basis requirement of an exempt employee under the FLSA. Ex. A., ¶ 138.

52.     According to Count I of the Underlying Complaint, Defendants had an actual practice of making improper deductions from Underlying Plaintiff and other employees' predetermined salaries. Ex. A., ¶ 139.

53.     According to Count I of the Underlying Complaint, in 2022, 2023, and 2024, Underlying Plaintiff worked more than 40 hours per week but Defendants failed to include bonuses in Underlying Plaintiff's regular rate of pay. Ex. A., ¶ 145.

54.     According to the Class Action Allegations contained in the Underlying Complaint, Defendants have employed hundreds of exempt employees who would be reclassified as non-exempt employees. Ex. A., ¶ 153.

55.     According to the Class Action Allegations contained in the Underlying Complaint, Defendants made deductions from employees' predetermined salary in violation of the FLSA. Ex. A., ¶ 154.

12664017.1

56.     According to Class Action Allegations contained in the Underlying Complaint, Defendants failed to include bonuses in employees' regular rate of pay resulting in nonexempt employees being systematically underpaid for overtime hours. Ex. A., ¶¶ 158-159.

57.     According to Class Action Allegations contained in the Underlying Complaint, Defendants engaged in a willful, uniform practice of failing to (i) pay overtime to non-exempt employees, (ii) pay predetermined salary of exempt employees, and (iii) figure bonus pay into the regular rate of pay for non-exempt employees. Ex. A., ¶¶ 160-162.

58.     On or about October 2, 2024, Erie sent a letter to JSN Network providing Erie's preliminary coverage position with respect to a similar lawsuit previously filed by Underlying Plaintiff captioned *Brianna Castelli v. JSN Network, Inc., et al.*, Civil Action No.: 1:24-cv-04574, in the United States District Court for the Northern District of Illinois (the "Original Lawsuit"). A true and correct copy of the October 2, 2024 letter is attached hereto as Exhibit B.

59.     On or about March 25, 2025, Erie filed its complaint for declaratory judgment against JSN Network, Inc., McHenry Donuts, Inc., and Brianna Castelli seeking a declaration that it had no duty to defend or indemnify JSN Network, Inc. and McHenry Donuts, Inc. under several policies of insurance with respect to the claims made in the Original Lawsuit. A true and correct copy of the complaint for declaratory judgment filed by Erie concerning the Original Lawsuit is attached hereto as Exhibit C.

60.     On or about June 30, 2025, counsel for JSN Network and McHenry Donuts agreed to withdraw their tender of the Original Lawsuit. Subsequently, on or about July 8, 2025, the court received a notice of voluntary dismissal from Erie and dismissed Erie's complaint for declaratory judgment regarding the Original Lawsuit without prejudice. A true and correct copy of the July 8, 2025 Minute Entry is attached hereto as Exhibit D.

12664017.1

61.     On or about November 13, 2025, JSN notified Erie of the commencement of the Underlying Action and provided Erie with a copy of the Underlying Complaint.

62.     On or about January 7, 2026, Erie sent letters to Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee requesting each withdraw their respective tender regarding the Underlying Action. True and correct copies of the Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee letters are attached hereto as Exhibits E, F, G, H, and I.

63.     Erie issued ErieSecure Business™ Policy #Q61-0183476 to Algonquin Coffee Inc. DBA Dunkin Donuts & Square Barn LLC for the policy period of April 24, 2024 to April 24, 2025 (the "Algonquin Policy"). A true and correct copy of the Algonquin Policy is attached hereto as Exhibit J.

64.     Erie issued Ultrapack Plus Policy No. Q3972028255 to Antioch Orchard Street Café Inc. D/B/A Dunkin Donuts for the policy period of January 28, 2024 to January 28, 2025 (the "Antioch Policy"). A true and correct copy of the Antioch Policy is attached hereto as Exhibit K.

65.     Erie issued ErieSecure Business™ Policy #Q61-0388088 to McHenry RT 31 Coffee Inc. DBA Dunkin for the policy period of April 15, 2024 to April 15, 2025 (the "McHenry Rt 31 Policy"). A true and correct copy of the McHenry Rt 31 Policy is attached hereto as Exhibit L.

66.     Erie issued ErieSecure Business™ Policy #Q61-0263632 to Johnsburg Coffee Inc. & Dunkin for the policy period of March 10, 2024 to March 10, 2025 (the "Johnsburg Policy"). A true and correct copy of the Johnsburg Policy is attached hereto as Exhibit M.

12664017.1

67. Erie issued ErieSecure Business™ Policy #Q61-0388092 to J & SP Food Inc. D/B/A Dunkin for the policy period of April 15, 2024 to April 15, 2025 (the "J & SP Policy"). A true and correct copy of the Algonquin Policy is attached hereto as Exhibit N. The Algonquin Policy, the Antioch Policy, the McHenry Rt 31 Policy, the Johnsburg Policy, and the J & SP Policy are collectively referred to herein as the "Erie Policies".

68. Erie seeks a declaratory judgment that the Erie Policies do not provide coverage for the claims asserted in the Underlying Action, and Erie has no duty to defend or indemnify Corporate Dunkin' Defendants and Non-Corporate Dunkin' Defendants against the claims in the Underlying Action.

69. An actual controversy has arisen and exists concerning Erie's coverage obligations under the Erie Policies, which merits a determination of rights of the parties by this Court.

**The Erie Policies**

70. The Erie Policies either contain an Employment Practices Liability Coverage Form or an Employment Practices Liability Insurance Coverage Endorsement.

71. The Erie Policies with an Employment Practices Liability Coverage Form Endorsement provide the following relevant terms, exclusions, and provisions:

**SECTION I. WHAT IS COVERED**

1. **Insuring Agreement**

    a.  "We will pay those "losses" that the insured becomes legally obligated to pay because of a "claim" or "suit" for a "wrongful employment act" (other than a "third party violation") against your "employees", "recognized volunteers", and applicants for employment to which this insurance applies. We will have the right and duty to defend the insured against any "claim" or "suit" seeking those damages. However, we will have no duty to defend the insured against any "claim" or "suit" seeking damages arising out of a "wrongful employment act" to which this insurance does not apply.

12

* * *

## SECTION II. EXCLUSIONS – WHAT IS NOT COVERED

This insurance does not apply to:

**A.**     **Criminal Acts**

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage "we" will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal, or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal, or malicious act.

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of Exclusion **A**.

* * *

**F.**     **ERISA, FLSA, NLRA, WARN, COBRA, and OSHA**

Any liability for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law.

It is acknowledged that "claims" and "suits" for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law", as such quoted language is used in the im-mediately-preceding paragraph, include, without limitation, any and all "claims" and "suits" which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

1.     The refusal failure or inability of an "insured(s)" to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion.

* * *

13

Notwithstanding the foregoing, this Exclusion F. shall not apply to the extent that a "claim" or "suit" is for "retaliation".

* * *

**G.    Prior Knowledge**

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured":

1.    Had knowledge of; or
2.    Could have reasonably foreseen might result in a "claim or "suit"

and which were known to the "insured" prior to the effective date of this EPL Coverage or the first EPL Coverage issued by "us" of which this EPL Coverage is an uninterrupted renewal.

**H.    Prior Notice**

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this EPL Coverage is a renewal or replacement or which it may succeed in time.

**I.    Prior Litigation**

Any liability arising out of any prior:

1.    Litigation;

2.    Administrative or regulatory proceeding or investigations
which an "insured" had notice, or alleging the same or "related wrongful employment acts" alleged or contained in such pending or prior litigation or administrative or regulatory proceeding or investigation which the "insured" had knowledge of prior to the effective date of this EPL Coverage or the first EPL Coverage issued by "us" of which this EPL Coverage is an uninterrupted renewal.

**SECTION III. WHO IS AN INSURED**

* * *

**B.    Corporation**

If "you" are shown in the Declarations as a corporation or organization other than a partnership, joint venture, or limited liability company, "you" and "you" subsidiaries are "insureds".

14

* * *

**SECTION VII – DEFINITIONS**

F.    "Employee" means an individual whose labor or service is engaged by and directed by "you" for renumeration, whether such individual is in a supervisory, co-worker or subordinate position otherwise, including any part-time seasonal, and temporary "employees".

* * *

H.    "Loss(es)" means monetary amounts to which this insurance applies and which "you" are legally obligated to pay (including front pay and back pay), judgments, settlements, pre-and post-judgment interest on that part of any judgment paid by "us", statutory attorney fees, and "defense costs"; …

* * *

Where permitted by law, "loss" shall include punitive or exemplary damages imposed upon any "insured" (Subject to the policy's other terms, conditions and exclusions).

L.    "Related wrongful employment act(s)" means "wrongful employment acts" which are the same, related or continuous, or "wrongful employment acts" which arise from a common nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts", regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds", or legal causes of actions.

M.    "Retaliation" means a "wrongful employment act" of an "insured" alleged to be in response to, the actual or at-tempted exercise by an "employee" of any right that such "employee" has under the law. Provided, however, "retaliation" shall not include the "wrongful employment act" of an "insured" alleged to be in response to the threat of or the actual filing of any "claim" or "suit" under the Federal False Claims Act or any other federal, state, local or foreign "whistleblower law".

N.    "Subsidiary" means:

1.    Any for-profit organization which, on or before the inception of the "EPL coverage period", is more than fifty (50%) percent owned by the "named insured", either directly or indirectly through one or more of its "subsidiaries; or

2.    A for-profit organization which becomes a "subsidiary" during the "EPL coverage period", but only upon the condition that within ninety (90) days of its becoming a "subsidiary", the "named

15

insured" shall have pro-vided "us" with full particulars of the new "subsidiary" and agreed to any additional premium or amendment of the provisions of this EPL Coverage required by "us" relating to such new "subsidiary". Further, cover-age as shall be afforded to the new "subsidiary" is conditioned upon the "named insured" paying when due any additional premium required by "us" relating to such new "subsidiary"…

\* \* \*

**O.**     "Suit" means a civil proceeding or an administrative proceeding seeking money damages, and includes an arbitration, mediation or any other alternative dispute resolution procedure seeking such damages, to which the "insured" must submit or may submit with "our" consent. "Suit" shall not include any civil proceeding or administrative proceeding arising from any labor or grievance dispute which is subject to a collective bargaining agreement.

\* \* \*

**S.**     "Wrongful employment acts(s) "means any actual or alleged:

1.     Wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

2.     Harassment or coercion (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

3.     Discrimination (including, but no limited to discrimination based upon age, gender, race, color, national origin, relation, sexual orientation or preference, pregnancy or disability);

4.     "Retaliation" (including lockouts);

5.     Employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you" …

72.     The Erie Policies with an Employment Practices Liability Insurance Coverage

Form provide the following relevant Insuring Agreement:

**SECTION I. WHAT IS COVERED**

**A.     Insuring Agreement**

16

12664017.1

1.  "We" shall pay those "losses" arising out of an "insured's" "wrongful employment act" (other than a "third party violation") against "your" "employees", "recognized volunteers" and applicants for employment to which this insurance applies.

73.     The Erie Policies with an Employment Practices Liability Coverage Form provide the following relevant Who Is An Insured provision:

**SECTION II – WHO IS AN INSURED**

1.  For purposes of this insurance, if you are designated in the Declarations as:

                                    * * *

    d.  A corporation or organization other than a partnership, joint venture, or limited liability company, you are an insured.

                                    * * *

3.  Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.

                                    * * *

    No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

74.     The Employment Practices Liability Coverage Form and the Employment Practices Liability Insurance Coverage Endorsement contain substantially the same Exclusions and Definitions.[1]

**COUNT I – Defendants JSN Network, McHenry Donuts, Inc., Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, IL], and Non-Corporate Dunkin' Defendants Are Not "Insureds" under the Erie Policies**

75.     Plaintiff adopts and repeats the allegations of Paragraphs 1 through 74 as and for Paragraph 75, as though the same were fully set forth herein.

---

[1] The Employment Practices Liability Coverage Form does not provide a definition for "Subsidiary".

76.     The Erie Policies do not include a policy of insurance issued to Defendant JSN Network.

77.     The EPL Coverage portion of the Erie Policies provides insurance to "subsidiaries" of the Named Insured to that respective policy.

78.     The Underlying Action alleges that JSN Network owns and operates 50+ Dunkin' Donuts locations.

79.     Accordingly, JSN is not a "subsidiary" as defined by the EPL Coverage portion of the Erie Policies.

80.     McHenry Donuts is not listed in the Erie Policies as a Named Insured or a subsidiary of any Named Insured.

81.      Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, IL] is not listed in the Erie Policies as a Named Insured or a subsidiary of any Named Insured.

82.     According to the Underlying Complaint, Non-Corporate Dunkin' Defendants are owners and/or employees of Defendants JSN Network and McHenry Donuts.

83.     Accordingly, the Erie Policies do not provide coverage to Defendants JSN Network, McHenry Donuts, Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, IL], and Non-Corporate Dunkin' Defendants with respect to the Underlying Action.

WHEREFORE, Erie respectfully requests that this Honorable Court declare as follows:

A.     That Erie has no duty to defend or indemnify Defendants JSN Network, McHenry Donuts, Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, IL], and Non-Corporate Dunkin' Defendants in connection with the Underlying Action; and

B.     Grant any other relief that this Honorable Court deems just and equitable under the circumstances, including an award of costs

## Count II – ERISA, FLSA, NLRA, WARN, COBRA, and OSHA Exclusion

84.     Plaintiff adopts and repeats the allegations of Paragraphs 1 through 74 as and for

Paragraph 84, as though the same were fully set forth herein.

85.     The EPL Coverage portion of the Erie Policies contain an ERISA, FLSA, NLRA,

WARN, COBRA, and OSHA Exclusion, which states:

**SECTION II.  EXCLUSION – WHAT IS NOT COVERED**

This insurance does not apply to:

* * *

**F.      ERISA, FLSA, NLRA, WARN, COBRA, and OSHA**

Any liability for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law.

It is acknowledged that "claims" and "suits" for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law", as such quoted language is used in the im-mediately-preceding paragraph, include, without limitation, any and all "claims" and "suits" which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

1.      The refusal failure or inability of an "insured(s)" to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion.

86.     The Underlying Complaint's sole cause of action concerns alleged violations of the

FLSA.

87.     The Underlying Complaint only described nondiscriminatory, improper

employment practices and policies in violation of the FLSA.

12664017.1

88.     Therefore, the ERISA, FLSA, NLRA, WARN, COBRA, and OSHA Exclusion precludes coverage for the Underlying Action under the Erie Policies.

WHEREFORE, Erie respectfully requests that this Honorable Court declare as follows:

A.      That Erie has no duty to defend or indemnify Corporate Dunkin' Defendants and Non-Corporate Dunkin' Defendants in connection with the Underlying Action; and

B.      Grant any other relief that this Honorable Court deems just and equitable under the circumstances, including an award of costs.

## Count III – Criminal Acts Exclusion

89.     Plaintiff adopts and repeats the allegations of Paragraphs 1 through 74 as and for Paragraph 89, as though the same were fully set forth herein.

90.     The EPL Coverage portion of the Erie Policies contain a Criminal Acts Exclusion, which states:

**SECTION II. EXCLUSION – WHAT IS NOT COVERED**

This insurance does not apply to:

**A.      Criminal Acts**

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage "we" will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal, or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal, or malicious act.

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of Exclusion A.

91.     The Underlying Action alleges Defendants willfully violated the FLSA and knew or acted with reckless disregard as to whether its conduct of paying a salaried/exempt employee on an hourly basis violated the FLSA.

20

92.     The Underlying Action also alleges Defendants engaged in a willful, uniform practice of failing to (i) pay overtime to non-exempt employees, (ii) pay predetermined salary of exempt employees, and (iii) figure bonus pay into the regular rate of pay for non-exempt employees.

93.     Therefore, the Criminal Acts Exclusion precludes coverage for the Underlying Action under the Erie Policies.

WHEREFORE, Erie respectfully requests that this Honorable Court declare as follows:

A.     That Erie has no duty to defend or indemnify Corporate Dunkin' Defendants and Non-Corporate Dunkin' Defendants in connection with the Underlying Action; and

B.     Grant any other relief that this Honorable Court deems just and equitable under the circumstances, including an award of costs.

### Count IV – Prior Knowledge, Prior Notice, and Prior Litigation Exclusions

94.     Plaintiff adopts and repeats the allegations of Paragraphs 1 through 74 as and for Paragraph 94, as though the same were fully set forth herein.

95.     The EPL Coverage portion of the Erie Policies contain a Prior Knowledge, Prior Notice, and Prior Litigation Exclusions, which state:

**SECTION II.  EXCLUSION – WHAT IS NOT COVERED**

This insurance does not apply to:

* * *

**G.     Prior Knowledge**

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured":

1.     Had knowledge of; or
2.     Could have reasonably foreseen might result in a "claim or "suit"

and which were known to the "insured" prior to the effective date of this EPL Coverage or the first EPL Coverage issued by "us" of which this EPL Coverage is an uninterrupted renewal.

### H. Prior Notice

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this EPL Coverage is a renewal or replacement or which it may succeed in time.

### I. Prior Litigation

Any liability arising out of any prior:

1.  Litigation;

2.  Administrative or regulatory proceeding or investigations which an "insured" had notice, or alleging the same or "related wrongful employment acts" alleged or contained in such pending or prior litigation or administrative or regulatory proceeding or investigation which the "insured" had knowledge of prior to the effective date of this EPL Coverage or the first EPL Coverage issued by "us" of which this EPL Coverage is an uninterrupted renewal.

96.     Upon information and belief, the court in the Original Lawsuit denied Underlying Plaintiff's motion for class certification, without prejudice.

97.     The Original Lawsuit was filed under a different case number than the Underlying Action.

98.     The Underlying Action is Underlying Plaintiff's second attempt to be granted class certification.

99.     Therefore, the Prior Knowledge, Prior Notice, and Prior Litigation exclusions preclude coverage for the Underlying Action under the Erie Policies.

WHEREFORE, Erie respectfully requests that this Honorable Court declare as follows:

12664017.1

A.    That Erie has no duty to defend or indemnify Corporate Dunkin' Defendants and Non-Corporate Dunkin' Defendants in connection with the Underlying Action; and

B.    Grant any other relief that this Honorable Court deems just and equitable under the circumstances, including an award of costs.


Dated:  February 18, 2026                              Respectfully submitted,

                                                       CLAUSEN MILLER, P.C.
                                              By:   */s/ Colleen A. Beverly*
                                                       Colleen A. Beverly (#6269463)
                                                       Clausen Miller P.C.
                                                       225 W. Randolph St.
                                                       Chicago, Illinois 60606
                                                       P: 312.855.1010 F: 312.606.7777
                                                       cbeverly@clausen.com

                                                       **Counsel for Erie Insurance Company**